Clayeo C. Arnold, California SBN 65070
Email: carnold@justice4you.com
Joshua H. Watson, California SBN 238058
Email: jwatson@justice4you.com
**CLAYEO C. ARNOLD, A PROFESSIONAL LAW
CORPORATION**
865 Howe Avenue
Sacramento, California 95825
916-777-7777 Telephone
916-924-1829 Facsimile

John Yanchunis, Florida Bar No. 324681
Email: jyanchunis@forthepeople.com
Marcio W. Vallaadares
Email: mvalladares@forthepeople.com
MORGAN & MORGAN COMPLEX
LITIGATION GROUP
201 N Franklin Street, Floor 7
Tampa, FL 33602-5157
Telephone: (813)275-5272
Facsimile: (813)275-9295
*Admitted Pro Hac Vice*

Attorneys for Plaintiffs,
Nina Pedro and Rosalind Lewis,
and those similarly situated

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NINA PEDRO and ROSALIND LEWIS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MILLENNIUM PRODUCTS, INC., a California Corporation, Doing Business As GT KOMBUCHA, GT SYNERGY; GEORGE THOMAS "GT" DAVE, an individual, WHOLE FOODS MARKET CALIFORNIA, INC., and DOES 1-50, inclusive,<br><br>Defendants. | Case No.  16-cv-3780-PSG-AJW<br><br>**SECOND AMENDED CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs ROSALIND LEWIS, and NINA PEDRO, by and through their undersigned counsel, on behalf of themselves and all other persons similarly situated, allege:

## INTRODUCTION AND SUMMARY OF THE ACTION

1.     Plaintiffs ROSALIND LEWIS and NINA PEDRO ("Plaintiffs") bring this action both in their individual capacities  and as a proposed class action against defendants MILLENNIUM PRODUCTS, INC., a California Corporation, Doing Business As GT KOMBUCHA and GT SYNERGY (hereinafter referred to as "MILLENNIUM"), GEORGE THOMAS "GT" DAVE, an individual, (hereinafter referred to as "GT DAVE") and WHOLE FOODS MARKET CALIFORNIA, INC. (hereinafter referred to as "WHOLE FOODS"), all of whom are hereinafter collectively referred to as "Defendants."  This action is brought on behalf of each named plaintiff and on behalf of all other similarly situated persons who have been damaged, per the class definition, by the Defendants' products (hereinafter collectively referred to as the "Class" or "Class Members").

2.     As discussed in more detail *infra*, this case concerns Defendants' manufacturing, marketing, and distribution of various types of kombucha beverages whose secondary fermentation process, which occurs post-distribution in the bottle, cannot safely be controlled proximately causing kombucha beverages being sold to the general public that, among other things:

        a)     explode once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the bottle and/or cap causing damage and/or loss of product;

        b)     leak from the cap once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the cap causing damage and/or loss of product;

        c)     are under so much pressure that when the bottle is opened a majority of the product  uncontrollably sprays out causing damage and/or loss of product;

        d)     have the caps on so tight that the bottle cannot be safely opened; and/or

        e)     contain alcohol in excess of 0.05% and are therefore adulterated and/or not properly labeled pursuant to State and Federal law.

(hereinafter collectively referred to as the "DEFECTS").

3.     Plaintiffs are informed, believe, and based thereon allege that Defendants have actual knowledge about each of these DEFECTS and have failed to, among other things, disclose and

adequately and reasonably warn the consumers about the DEFECTS and, therefore, the potential and actual dangers posed by the DEFECTS are widespread, unreasonable, and unsafe to purchasers of Defendants' kombucha beverages.

## **PARTIES**

4.      Plaintiff NINA PEDRO (hereinafter referred to as "Plaintiff PEDRO") is and was at all relevant times a resident of the city of San Francisco, San Francisco County, California.

5.      On multiple occasions within the past three years, including within the past year, Plaintiff PEDRO has purchased or otherwise obtained for consumption defendants' kombucha from Whole Foods, located in San Francisco, California.  On multiple such occasions, Plaintiff PEDRO has found that her bottle of kombucha has broken its seal, leaked out of the bottle, spoiled, and by virtue of leaking spilled on and caused damage to her personal property, including but not limited to purses and handbags, as well as their contents.

6.      On information and belief, this occurred because of the ongoing fermentation and/or related biological processes within the defendants' bottles of kombucha.  The manner in which defendants manufacture, distribute, and sell kombucha results in the product being provided to consumers in a state where it has undergone and continues to undergo unmonitored biological activity via bacteria, yeast, and similar microorganisms in the product which cause byproducts of fermentation including but not limited to the production of gasses.  Such byproducts, coupled with the chemical composition of the beverage, wear down protective seals on the product, causing the seals to fail, the product to leak, and resulting spoilage.

7.      When the defendants' product so spoils, it causes loss of the benefit of the bargain for consumers such as Plaintiff PEDRO, and also related property damages.  On information and belief, defendants are well aware of this spoilage and leaking problem from, *inter alia*, long standing customer complaints, widespread problems with product leakage during pre-sale storage and transportation, consumer-postings to defendants' websites/blogs/social media providing notice and commentary about such problems, and knowledge of the general properties of defendants' own product and of their competitor's products, many of which are sold in more secure and appropriate packaging.

3

8.   Plaintiff ROSALIND LEWIS (hereinafter referred to as "Plaintiff LEWIS") is domiciled in Washington State, and provides diversity for the purposes of jurisdiction in this matter.

9.   On or about sometime in December 2014, Plaintiff LEWIS purchased a bottle of defendants' kombucha from Whole Foods, located in San Francisco, California.

10.   Plaintiff LEWIS purchased Defendants' kombucha from the non-alcoholic beverage section of Whole Foods and was not required to show identification upon purchase.

11.   Plaintiff LEWIS consumed some of Defendants' kombucha and immediately became sick and experienced, among other things, trouble breathing, and increased heart rate.

12.   The bottle of Defendants' kombucha that Plaintiff LEWIS consumed stated as follows regarding the alcohol content:

"Product contains a trace amount of alcohol."

13.   Plaintiff LEWIS is informed, believes, and based thereon alleges that the kombucha beverage that Plaintiff LEWIS consumed contained alcohol in excess of .05%, the legally allowed limit of alcohol for a non-alcoholic beverage.

14.   Plaintiff LEWIS is informed, believes, and based thereon alleges that had Defendants' properly labeled the alcohol content on their kombucha beverages Plaintiff LEWIS would not have purchased and consumed the product and, therefore, would not have gotten sick.

15.   Plaintiffs are informed, believe, and based thereon allege that Defendants have actual knowledge about each of these DEFECTS and have failed to, among other things, disclose and adequately and reasonably warn the consumers about the DEFECTS and, therefore, the potential and actual dangers posed by the DEFECTS are widespread, unreasonable, and unsafe to purchasers of Defendants' kombucha beverages.

16.   Plaintiffs are informed, believe, and based thereon allege that MILLENNIUM PRODUCTS INC. is a corporation organized under the laws of the State of California, having its principal place of business in Beverly Hills, California. Plaintiffs are informed, believe, and based thereon allege that Defendant MILLENNIUM does business throughout the United States and, in particular, does business in the State of California and in this County. Plaintiffs are informed, believe, and based thereon allege that Defendant MILLENNIUM manufactures, markets, and

distributes multiple types of kombucha beverages that contain DEFECTS.

17.    Plaintiffs are informed, believe, and based thereon allege that that Defendant GT DAVE is an adult male residing in Beverly Hills, California. Plaintiffs are informed, believe, and based thereon allege that defendant GT DAVE is the chief executor officer and shareholder of defendant MILLENNIUM.

18.    Plaintiffs are informed, believe, and based thereon allege that Defendant WHOLE FOODS MARKET CALIFORNIA, INC. ("WHOLE FOODS") is a California Corporation engaged in the retail sale of products, including the subject kombucha, to the general public in California and throughout the country.

19.    At all times herein mentioned, each of the Defendants were the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, were acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

20.    At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership, and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership, and common enterprise.

21.    At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

22.    At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein. At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

23.    The complete and true names, involvement and/or capacities, whether individual, corporate, professional, or otherwise, of the Defendants named herein as DOES 1 through 50, are not presently fully known and/or are unknown to Plaintiffs who, therefore, sues said defendants under such fictitious names.  Plaintiff requests leave of this Court to amend this Complaint to set forth the

true names, involvement, and/or capacities, whether individual, corporate, professional, or otherwise, when the same have been ascertained or adequate discovery is produced, provided and/or obtained. Plaintiff is further informed, believes, and based thereon alleges that DOES 1-50 have aided, abetted, directly or actively participated in, and/or ratified the conduct complained of herein.  Plaintiff further alleges that all of the defendants designated as DOES 1-50 are responsible for and are a direct and legal cause in some manner of the events, happenings, tortuous conduct, malfeasance and damages complained of herein or referred to, which caused the injuries and damages to Plaintiff as set forth in this Complaint.

24.     Plaintiff is informed, believes, and based thereon alleges that at all relevant times herein Defendants and/or DOES 1-50 were and are attorneys, officers, directors, agents, representatives, servants, joint venturers, aiders and abettors, co-conspirators, representatives, and/or employees of the other Defendants, and each of them.  Plaintiff is further informed, believes, and based thereon alleges that at all times relevant herein, the named Defendants and each of them, were acting within the scope and course of said agencies, services, ventures, conspiracies, and/or employment with the other defendants, and/or with their ratification, knowledge, and/or consent.

25.     Plaintiffs are informed, believe, and based thereon allege that Defendants' manufacture, market, promote, distribute, and sell kombucha beverages containing DEFECTS throughout the United States, including to hundreds of thousands of consumers in California.

## JURISDICTION AND VENUE

26.     The Court has subject matter jurisdiction over this class action pursuant to 28 U.S.C. §1332(d), because one of the Plaintiffs and the other Class members are of diverse citizenship from Defendant, there are more than 100 Class members nationwide, and the aggregate amount in controversy exceeds five million dollars ($5,000,000.00), excluding interest and costs.

27.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff LEWIS' claim occurred, in the District where this matter was originally filed (Northern California, San Francisco), but the matter was transferred by court order to this District (Central California, Los Angeles), wherein other related matter(s) were already pending.

## COMMON FACTUAL ALLEGATIONS

28.     Defendant Millennium Products Inc. has previously responded to discovery requests by a plaintiff in another matter concerning allegations of personal injury arising from an alleged explosion of a bottle of Defendants' kombucha.  WHOLE FOODS is a party to the personal injury case, and received copies of the subject discovery responses.  The responses were verified under oath for Millennium Products Inc. by GT DAVE.  Plaintiffs submit that these discovery responses, verified by the chief executive of Millennium Product Inc. demonstrate a clear understanding of the matters giving rise to this litigation, and related cases, including but not limited to the matter of *Retta et al v Millennium* currently pending before this Court; and that the responses reflect an understanding by Defendants, including Millennium Products Inc., that the problems exist in Millennium's whole kombucha product line with respect to fermentation, alcohol generation, carbon dioxide generation, and notice of exploding bottles.

29.     In the discovery referenced immediately above, Defendants MILLENNIUM and GT DAVE admitted the following under oath:

a.  MILLENNIUM manufactures a kombucha product, which is a beverage for human consumption made by fermenting sweetened tea with a mix of bacteria and yeast.

b.  MILLENNIUM sells the product through retailers, including Defendant WHOLE FOODS.

c.  MILLENNIUM manufactures, and ships the product with the intention of it being sold to retail customers in a condition where the product includes living bacteria and yeast, and these living organisms the product is marketed as probiotic.

d.  Fermentation by the yeast and bacteria in the product continues throughout the shipping process and up to the time of sale to retail consumers.

e.  Where the yeast in the product undergoes aerobic respiration, it produces alcohol and carbon dioxide.

f.  MILLENNIUM has manufacturing, shipping, and storage specifications that should prevent bottles of its product from shattering or exploding due to internal pressure.

g.  Nonetheless, MILLENNIUM has received consumer complaints that its bottles

explode; MILLENNIUM has also received notice that its bottles leak due to internal pressure while being stored by retailers in anticipation of sale.

h. MILLENNIUM's product label does not include express explosion, leaking, or shattering warnings, as reflected in the label produced by MILLENNIUM in its attached discovery responses.

30. In part based on the above sworn discovery responses, Plaintiffs allege that:

a. MILLENNIUM is aware that all of its kombucha products undergo ongoing fermentation after manufacture, and that this process leads to a buildup of internal pressure within bottles of the product and the formation of alcohol. This is reflected in MILLENNIUM's above discovery responses, which discuss their whole kombucha line, and are in no way limited to any particular flavor or type of kombucha.

b. MILLENNIUM is aware that its kombucha product leaks and explodes.

c. MILLENNIUM is aware that its kombucha product lacks any warning about leaks or explosions. However, it is plain that reasonable consumers do not expect beverages of this nature sold at retail outlets to carry a risk of explosion or leakage. The unwillingness of MILLENNIUM to acknowledge such risk poses a real and ongoing danger to consumers because MILLENNIUM fails to mitigate or warn of such hazard or potential for product waste.

31. On information and belief, Plaintiffs allege that Defendant WHOLE FOODS is and at all times was materially aware of the fermentation, explosion, and leakage problems associated with MILLENNIUM's kombucha products, and had given notice to MILLENNIUM of such problems, yet continued to sell the products.

32. Plaintiffs are informed, believe, and based thereon allege that Defendant MILLENNIUM was founded by defendant GT DAVE in 1995 and Defendants are currently the leading manufacturers and distributors of multiple types of kombucha beverages that contain DEFECTS.

33. Plaintiffs are informed, believe, and based thereon allege that kombucha is generally an effervescent fermented drink of sweetened black tea that is manufactured, marketed, and sold by the

Defendants to the general public as a functional food with several unsubstantiated health benefits.

34.     Plaintiffs are informed, believe, and based thereon allege that the kombucha beverages that Defendants' manufacture, market, and distribute to the general public is a mixed culture of several species of live bacteria and yeast that resembles a mushroom in appearance.

35.     Plaintiffs are informed, believe, and based thereon allege that the kombucha that Defendants' manufacture, market, and distribute to the general public is made by adding a starter sample of kombucha culture (symbiotic colony of bacteria and yeast, or "SCOBY") from an existing culture to sugar and black or green tea and allowing the mixture to ferment.

36.     Plaintiffs are informed, believe, and based thereon allege that in or about June 2010, Defendants, in response to investigations by multiple government agencies over the alcohol content of their kombucha beverages as well as a class action lawsuit alleging the same, were forced to take their kombucha beverages off of the market.

37.     Plaintiffs are informed, believe, and based thereon allege that in or about December 2010, Defendants re-launched two separate lines of kombucha back onto the market.

38.     Plaintiffs are informed, believe, and based thereon allege that the first line will be hereinafter referred to as the "Enlightened" brand that is manufactured, marketed, and distributed by Defendants as containing less than 0.5% alcohol ("ENLIGHTENED").

39.     Plaintiffs are informed, believe, and based thereon allege that the second line will be hereinafter referred to as the "Classic" brand that is manufactured, marketed, and distributed by Defendants as containing in excess of 0.5% alcohol and can only be purchased by persons over twenty-one years old ("CLASSIC").

40.     At all times relevant to this complaint, Defendants published the following pertinent statements on their website at http://www.synergydrinks.com/ about their kombucha beverages:

> "Our Enlightened™ line of GT's Kombucha is a new interpretation of an ancient elixir. It has a lighter and smoother personality than our original formula with the same high nutritional value that you expect from us. With a unique blend of proprietary probiotics and powerful antioxidants, each bottle is designed to nourish your body from the inside out."

http://synergydrinks.com/index.php/products#enlightened-kombucha

"Our Classic line of GT's Kombucha has the bold and identifiable effect that we first

9

introduced in 1995 that made the name GT's Kombucha synonymous with quality. We have chosen to modify our labeling instead of compromise our formula. GT's Classic may contain more than 0.5% alcohol therefore you must be 21 or over to purchase."

http://synergydrinks.com/index.php/products#classic-kombucha

41.    Plaintiffs are informed, believe, and based thereon allege that both Defendants' ENLIGHTENED and CLASSIC kombucha contain alcohol in excess of the amount stated on the bottle in violation of both State and Federal law.

42.    Plaintiffs are informed, believe, and based thereon allege that as part of their uniform custom and practice, Defendants advertise and market both the CLASSIC and ENLIGHTENED kombucha to the general public in California and throughout the United States of America.

43.    Plaintiffs are informed, believe, and based thereon allege that a byproduct of the Defendants' kombucha's fermentation process is carbon dioxide ($CO_2$).

44.    Plaintiffs are informed, believe, and based thereon allege that after the Defendants' bottle the kombucha it continues to ferment, especially when the kombucha is stored at or above room temperature ("SECONDARY FERMENTATION") which process proximately causes the DEFECTS alleged herein.

45.    Plaintiffs are informed, believe, and based thereon allege that the DEFECTS caused by the SECONDARY FERMENTATION process are magnified when the kombucha contains chia seeds because during the SECONDARY FERMENTATION process the chia  seeds expand thereby significantly increasing both the volume and pressure in the bottles the contain the kombucha.



46.    Plaintiffs are informed, believe, and based thereon allege that Defendants cannot control the SECONDARY FERMENTATION process that occurs in the bottles of Defendants'

kombucha and that Defendants have actual knowledge of the same.

47.    Plaintiffs are informed, believe, and based thereon allege that it is Defendants' inability to control the SECONDARY FERMENTATION process of their Kombucha beverages that proximately causes the DEFECTS which pose significant potential and actual dangers to consumers.

48.    Plaintiffs are informed, believe, and based thereon allege that the warning labels on Defendants' kombucha beverages fail to adequately and reasonably warn the consumers about the SECONDARY FERMENTATION process that occurs in the bottles as well as the DEFECTS that are proximately caused by the Defendants' inability to control and manage the same.

49.    Plaintiffs are further informed, believe, and based thereon allege that the warning labels on Defendants' kombucha beverages fails to adequately and reasonably warn the consumers about the specific alcohol content contained in the beverages.

50.    Plaintiffs are informed, believe and based thereon allege that the SECONDARY FERMENTATION results in pressures and/or chemical properties that make the subject kombucha inappropriate for packaging in the bottles utilized by defendants, but that defendants nonetheless continue to use such inappropriate packaging with insufficient seals, resulting in product spoilage, loss, and related consumer economic damages including loss of the benefit of the sale of the beverage and property damage related to the leaking of the beverage.

51.    As set forth in detail below, from 2012 to the present there have been numerous consumer complaints to Defendants relating to the DEFECTS, and, as such, Plaintiffs are informed, believe, and based thereon allege that consumers are at real risk injury and damage due the DEFECTS contained in Defendants' kombucha and Defendants have actual knowledge of the same and have failed to take action to both reasonably and adequately warn and protect the consumers.

52.    On November 26, 2012, the following was anonymously posted on Yahoo Answers:

"So I caved and bought one of those Synergy drinks (grape flavored) with the weird seed things suspended in it. I was about to open it at the computer and it sounded like it was going to fizz all over the place. Because of that, I didn't open it right away. I left it there for about an hour, tried again, and the same thing happened.

I took it to the kitchen sink expecting it to make a mess, and let me tell you, I was most definitely right. Took the cap off a little more than before and the drink shot across the

kitchen hitting the far wall.

How can they sell a drink that makes a huge mess when you open it? It's not like I shook it or anything, not that it should make a difference seeing as it isnt carbonated..

What caused this explosion? Is this normal?

**Update:**   Just opened it the rest of the way...the cap blew off. It seemed like the glass bottle was under an extreme amount of pressure and i'm surprised it didn't break the glass...

It's now all over the closest two walls, all the previously clean pots/pans/dishes/ my face, and my sweatshirt.

What the f.

**Update 2:**   Just found a seed on the washing machine...That isnt even in line of site of the sink...

**Update 3:**   Jeffrey- The drink is not carbonated as far as i can tell from the label. The only ingredients are organic raw kombucha, raw chia seeds, and grape juice along with some probiotics. It is not pasteurized. The company says it kills most of the health benefits so they don't do that. The label does say the product might contain alcohol so I'm guessing it fermented. It isn't expired either."

https://answers.yahoo.com/question/index?qid=20121126034347AA9ZMIb

53.   In response to posting set forth in Paragraph 48 *supra*, the following was posted by Kaleb on Yahoo Answers:

"mine always explode all over the place when i open them its normal"

https://answers.yahoo.com/question/index?qid=20121126034347AA9ZMIb

54.   In response to the posting in Paragraph 48 *supra*, the following was posted by Connor:

"I'm thinking that you should check the label again to make sure it's not carbonated. They put so much effort into making these expensive drinks look good that the instruction sometimes get lost in the graphic design. If it's definitely not carbonized then it may be out of date (check the label) or had a bad seal or something went wrong during processing (like not properly pasteurizing) and it fermented (hay free alcohol).UPDATE Found it. This started to bug me so I started looking for similar stories, and lots of them. *But After I went to a how to make Kombucha fact site I found out that in the process there is the opportunity for secondary fermentation in*

*the bottle that can create a large amount of carbonation. So if the company does not carbonize the product it must occur in the bottle during the shipping process. the site said this occurs best at room temp and to refrigerate after the fermentation is over*." [emphasis added]

https://answers.yahoo.com/question/index?qid=20121126034347AA9ZMIb

55.   On June 26, 2012, the following was posted on the website Daily Downward Dog:

"Confessions of a Kombucha Virgin

I attended a lunch with a bunch of my fellow yoga teachers a while back, and the subject of the conversation moved to kombucha. I didn't want to admit that I had no idea what it was, so I just listened intently as they went on about this wonder elixir. I remember hearing that it was all natural, contained magic mushrooms, was fizzy and to be opened with caution, could clean you out, and filled you up with renewed energy.

I learned that kombucha can boost the immune system, reverse the aging process, and is a cure-all for a wide range of conditions including baldness, insomnia, intestinal disorders, arthritis, and cancer…but they had me with the mention of the magic mushrooms. If I could drink something healthy that gave me a little natural buzz and helped me stay young, I wanted to give it a try. I made a mental note to pick myself up some kombucha the next time I went to a health food store.

A couple of months passed, and I hadn't yet tried kombucha. Then one day there were some extra bottles graciously left at Yoga Bliss Akron by my fellow yoga teacher, Juli Hicks (Yoga Bliss now carries GT's Kombucha, so you can grab a cold one after a yoga class). I was hot after teaching and in a hurry, so I grabbed a bottle and ran to my car shaking the bottle up to move around all the sediment that settles on the bottom of each bottle, which I have to admit kind of creeps me out.

I got in my car, pulled out to start my drive home, and went to open my bottle of kombucha.

**Can you say EXPLOSION!**

In case you need a visual of the liquid explosion!

Kombucha was spewing out of the glass bottle and spraying up all over me and my car. Plus, I was still trying to drive. It's amazing that I didn't get in a wreck, but luckily I came to a red light and was able to maneuver  the lid back onto the bottle to contain the combustion. I drove the rest of the way home sitting in a big, wet diaper of kombucha. As thirsty as I was, I was not going to open that bottle again and risk another blowout.

Yes, I had been warned not to shake the bottle. The bottle even has a plastic cap cover with the following friendly warning: naturally effervescent – careful when opening. That my friends, is the biggest product understatement I've heard in quite a while.

13

*GT's you may want to beef up the warning here!*

After cleaning up the pool of liquid, I took the possessed bottle into the house and told my husband the story behind my green bath. At this point we were both a little leery of drinking something that had that much gassy, fizzy power to it. I started to conjure up visions of Charlie drinking the fizzy lifting drinks in *Willie Wonka and the Chocolate Factory*. Surely, no good could come from this.

The experience in my car had left no room in my imagination for what this liquid had the potential to do inside my digestive tract.

After letting the bottle set for a good hour the curiosity got the best of us, and we decided it was safe to open again and each did a shot to see if we would survive.

We did, and I have to admit, even though I never experienced the mushroom buzz, I am a fan of the Kombucha. I like the taste, a cross between sparkling apple cider and champagne, and I like the way it makes me feel. But I'll never shake it up like a Polaroid again!

I've since learned that kombucha is made by fermenting tea using yeast and bacteria, which forms a kombucha culture. This culture is what is affectionately referred to as the mushroom. I guess it really is a magic mushroom if it produces a drink that can energize my mind, fight off the effects of aging with anti-oxidants, and boost my immune system.

So, what's your kombucha confession? Let me know if you've tried it, what brands or flavors you like best, if you're adventurous enough to make you own, and how to remove the kombucha smell from a car interior!" [emphasis added]

http://dailydownwarddog.com/confessions-of-a-kombucha-virgin/

56.     On February 9, 2013, at 7:58 a.m. Garry Spedding, P.H.D. of Brewing and Distilling

Analytical Services, posted the following blog on his firm's website:

"*These are interesting products along with Kombucha and similar beverages. Our job is to test such beverages and, even though the companies marketing Chia beverages cover themselves with a broad statement "must be kept chilled", the public needs to be aware of the potential alcohol content in such beverages (which in the case of Kombuchas are still on the market with up to 1.5% alcohol by volume) but also over carbonation and bottle rupture.*

*We have tested beverages that have been opened and then left for potential consumption later – one alarming issue is going to be with Chia drinks. When opened and allowed to warm up the continued fermentation (or excessive carbon dioxide gas expansion) causes the seeds to swell to 5 to 10 times their internal size and we have witnessed several (recapped) bottles explode violently in our testing facilities when warmed to room temperature*. The concern is if anyone enjoys a beverage such as these on a warm day, reseals the bottle and forgets about it – the next

day is sufficient for anyone picking up that bottle to be hurt in a catastrophic glass rupture (my concern is for a child picking it up or being asked to dispose of it). One of our staff can attest to how violently one blew in his (protected) hands.  We are now testing for alcohol content in such (Chia) beverages but do note, from continued testing, that many Kombucha manufacturers have no idea as to the alcohol content in these so-called non-alcoholic beverages (the no alcohol statement now conveniently left off the label since the TTB initially recalled all Kombucha from the shelves).  Furthermore, with such beverages – several instances are incorrectly reporting the sugar content and I think we are seeing a burgeoning field of entrepreneurs having such products made for them with little to no understanding of the composition, dangers and safety of such beverages. The public are not seeing truth in advertising in our opinion (and as these are marketed through health food chains children may be exposed to quite high amounts of alcohol). While I wish these companies well there needs to be more careful scrutiny of their claims on such beverages. ***In the case of Chia – after what we witnessed in our laboratory – this product might lead to serious injuries without more specific warnings – a disaster waiting to happen! More regulation is needed in this burgeoning industry***.” [emphasis added]

http://www.alcbevtestingnews.blogspot.com/search?updated-max=2013-04-10T19:56:00-07:00&max-results=7&start=14&by-date=false

57.    On February 9, 2013, at 9:28 a.m. Evan Coppage posted the following response to Mr. Spedding’s blog post set forth in paragraph 52 *supra*:

“I attest. Two different bottles exploded in the lab. I cleaned up chia seeds that were sprayed in a 10 foot radius!”

http://www.alcbevtestingnews.blogspot.com/2013/02/alcoholic-kombucha-exploding-chia.html#comment-form

58.    On June 7, 2013, at 11:49 a.m. WinterMoonlight posted the following review of Defendants’ Kombucha on Amazon.com:

“Your rant on carbonation makes no sense. ***The one I opened today nearly exploded out of my hand***. Exactly how much carbonation does one need? You sound like some junkie that needs a fix. And why did you leave your comment under the GT's brand, when you mention Synergy's brand name in the second paragraph? This isn't a helpful review, just a statement of your personal preferences. If you need more bubbles, buy a twin pack of Sodastream carbonating bottles here on Amazon.” [emphasis added]

http://www.amazon.com/review/R2MBFDR77MMZSI/ref=cm_cr_pr_viewpnt#R2MBFDR77MMZSI

59.    On June 18, 2013, at 2:33 p.m. K. Marvin posted the following review of Defendants’ Kombucha on Amazon.com:

15

> "We buy it for 1/2 the price you see here, at our local store. It's very carbonated most of the time but I have gotten some bottles where the seal has maybe gone bad (I see it leaking) and it's flat. Usually I can't even open it in my car because it makes a huge mess from bubbling over!"

http://www.amazon.com/review/R2MBFDR77MMZSI/ref=cm_cr_pr_viewpnt#R2MBFDR77MMZSI

60.    On August 30, 2012, Paul Schlacter posted a video on YouTube of the opening of one of Defendants' Kombucha drinks and exploding with the following commentary:

> "Am I the only one to have GT's Chia drinks explode all over the place???. What an incredible mess! After having one explode in my car, I bought another one and filmed the opening of the bottle. It looks like disgusting slushy puking out of the bottle. Awful."

61.    UncleBobbyjr posted the following response to Paul Schlacter on YouTube:

> "It's happened to me twice. They were both the grape chia seeds flavor…"

62.    Nick95playa posted the following response to Paul Schlacter on YouTube:

> "Opened the kombucha trilogy. It exploded in the wholefoods and then another one at home. Its common with certain flavors."

63.    Migit128 posted the following response to Paul Schlacter on YouTube:

> "***Thats nothing compared to what just happened to me…It's on three of the 4 kitchen walls, my face, and all over my clothes right now. I dont understand how the glass bottle didn't shatter in my hand***." [emphasis added]

64.    On October 23, 2012, Jennifer Boyle posted the following on Defendants' Facebook webpage:

> "Any hints on how to open the bottle. I have had 5 coworkers all try to open my Gingerade and we CAN'T physically open the bottle."

www.facebook.com/GTsSynergyKombucha

65.    On October 23, 2012, at 6:16 p.m. Pat James posted the following on Defendants' Facebook webpage:

> "I would like an answer to this question as well. I have had 3 bottles that no one has been able to open, very disappointing. Several that I could not open myself and had to get help."

www.facebook.com/GTsSynergyKombucha

66.    On October 24, 2012, at 5:04 p.m. Defendants' posted the following on their Facebook

16

webpage in response to Pat James' posting set forth in paragraph 61 *supra*:

"EEEK! We are so sorry for the inconvenience…kindly contact us at 877-735-8423 or info@gtskombucha.com and we will make things right :-)"

www.facebook.com/GTsSynergyKombucha

67.     On November 1, 2012, at 7:32 p.m. Deidra Rowe posted the following on Defendants' Facebook webpage:

"They are so hard to open. I work at an elementary school and our custodian actually got one of her tools to finally get it opened! Have been drinking GT kombucha regularly for almost 2 months and I love it! Just wish I could open them!"

www.facebook.com/GTsSynergyKombucha

68.     On December 1, 2012, Bobby Brown posted the following on Defendants' Facebook webpage:

"I've had two grape chia seeds explode on me. I've talked to two other people that have experienced this as well. Anyone else out there having this issue. There's nothing more disappointing than being ready to enjoy my kombucha only to have it explode like a bomb and chia seeds end up all over my kitchen wall."

www.facebook.com/GTsSynergyKombucha

69.     On December 3, 2012, at 3:09 p.m. Defendants' posted the following on their Facebook webpage in response to Bobby Brown's posting set forth in paragraph 64 *supra*:

"Hello Bobby, we are so sorry to hear about this! We would like to resolve this matter asap and invite you to call or email us at your convenience: 877-735-8423 or info@gtskombucha.com."

www.facebook.com/GTsSynergyKombucha

70.     On March 13, 2013, at 11:10 a.m. Tatiana Gotts posted the following on Defendants' Facebook webpage:

"This is not acceptable and should be fixed if you want to retain your customers. We have been buying GT's kombucha for years and this week we purchased about 6 bottles and none can be opened. I am going to return them all to Whole Foods. I don't think a drink should have to [sic] pried open with a monkey wrench."

www.facebook.com/GTsSynergyKombucha

71.     On March 16, 2013, at 8:24 p.m. Reiner Wishart posted the following on Defendants'

Facebook webpage:

> "I also have been unable to open my bottles (hence why I googled and found this post). ***I have found a way which is unfortunate and possibly dangerous, but I take a small knife with a point, hold the bottle steady, and stab the lid in the middle****….*" [emphasis added]

www.facebook.com/GTsSynergyKombucha

72.   On December 22, 2013 at 10:48 a.m. Amanda C. Bromberg posted the following on Defendants' Facebook webpage:

> "***This has happened to me twice now recently as well- completely like a bomb and pretty scary when you're not expecting it. Second time I saw the signs and brought it into the bathtub to open, so the cleanup was contained. But the first one exploded all****…*" [emphasis added]

www.facebook.com/GTsSynergyKombucha/

73.   On March 22, 2013, at 5:03 p.m. Flori Manning posted the following on Defendants' Facebook webpage:

> "Same thing here. For the past several months, it's been hellish to get them to open. What's goin on guys?"

www.facebook.com/GTsSynergyKombucha

74.   On December 22, 2013, at 5:44 p.m. Alexis Deeg posted the following on Defendants' Facebook webpage:

> "***Bought 12 Cherry Chias (four at a time) over the last couple of weeks and every SINGLE one exploded. I called the store I bought them from who said they were from different shipments so it couldn't have been that they dropped a box and shook them up****…*" [emphasis added]

www.facebook.com/GTsSynergyKombucha

75.   On December 22, 2013, at 5:46 p.m. Alexis Deeg posted the following in Defendants' Facebook webpage:

> "And yeah like the user said above, the pressure is pretty intense…The ghist [sic] time it happened I tried to screw the top back I because I was in the process of walking into my job and it popped the cap off, leaving my coat covered in seeds and had me smeller like vinegar. Somethings amiss."

www.facebook.com/GTsSynergyKombucha

76.     On January 26, 2014, at 10:58 p.m. Azyz Brah posted a picture of an exploded bottle of Defendants' Kombucha on Defendants' Facebook webpage:

www.facebook.com/GTsSynergyKombucha

77.     On January 28, 2014, at 11:06 p.m. Ash England posted the following on Defendants' Facebook webpage:

"***I love the grape chia, and this is the 2nd bottle I can't get the gd cap off of. I'm worried that if it does finally come off it will explode. Wtf mates***?" [emphasis added].

www.facebook.com/GTsSynergyKombucha

78.     On January 28, 2014, at 6:58 p.m. Christopher Alan Stanley posted the following on Defendants' Facebook webpage:

"Hi, today I bought 7 Grape Synergy with chia seeds- Upon opening the glass bottle fizzed everywhere (like a can oh pepsi that has been shaken) and half the bottle was gone. This happened on three of the 7 bottles. Can you explain? The expiration date is 2-2-14"

www.facebook.com/GTsSynergyKombucha

79.     On February 4, 2014, Brianna Griebel posted the following on Defendants' Facebook webpage:

"Soo…I bought this product on a whim. Looks great & I'm obsessed with chia seeds. One problem- I've tried to open it for the past 2 hours with no success and a blister started to form on my right hand. Run it under water you say? Tried that. Use a towel or something to protect my hand and get a better grip on the bottle? Yep, twisted a muscle I didn't know I had. Yelled special words at it in hopes it would unlock it's death grip on itself? Mmmhm…my neighbors are probably wondering what's going on. User error? I friggin hope so. Because I have no idea how in the world you were able to seal this cover so tight that not even the Hulk himself could break into this beautiful bottle of what I hope is pure liquid gold deliciousness. But seriously, you need to share your secret with me because I'd like to drink this without having to use a hammer and nails as if I'm attempting to retrieve coconut juice from the shell one drip at a time."

www.facebook.com/GTsSynergyKombucha

80.     On February 6, 2014, at 10:25 a.m. Stephanie Long Priestley posted the following on Defendants' Facebook webpage:

19

"I'm forlornly looking at the second bottle of Kombucha that I've purchased, but can't open. The first time I threw it away. Not going to do that again. How do I open this thing?"

www.facebook.com/GTsSynergyKombucha

81.     On February 6, 2014, at 11:43 a.m. Carrie Genzel posted the following on Defendants' Facebook webpage:

"Been having the same problems this week. I've had to ask other people to open my bottles three days in a row, not sure what is going on, I've never had trouble before. I finally put the cap under hot water and then opened with a dish cloth, but it wasn't easy."

www.facebook.com/GTsSynergyKombucha

82.     On February 6, 2014, at 2:23 p.m. Defendants' posted the following in their Facebook webpage in response to Stephanie Long Priestley's posting set forth in Paragraph 76 *supra*:

"Stephanie, we are truly sorry for this inconvenience... We want to make it right! Contact us at info@gtskombucha.com Your patience and support mean the world to us!"

www.facebook.com/GTsSynergyKombucha

83.     On February 9, 2014, at 7:56 p.m. Shannon McCully posted the following on Defendants' Facebook webpage:

"Put on a rubber glove and it seems to grip better."

www.facebook.com/GTsSynergyKombucha

84.     On February 9, 2014, Stephanie Long Priestley posted the following on Defendants' Facebook webpage in response to the posting by Shannon McCully set forth in paragraph 79 *supra*:

"I was afraid to do that, thought it might explode! That would be just my luck..."

www.facebook.com/GTsSynergyKombucha

85.     On February 11, 2014, at 2:29 p.m. Autumn Zimmerman posted the following on Defendants' Facebook webpage:

"I can't open my bottle :(…3RDs tried helping!"

www.facebook.com/GTsSynergyKombucha

86.     On February 11, 2014, at 2:31 p.m. Stephanie Long Priestley posted the following on Defendants' Facebook webpage:

"Hot water is your only chance. If that doesn't do it, contact info@gtskombucha.com ***They***

20

*know about the problem, but clearly theres a lot of product out there*." [emphasis added]

www.facebook.com/GTsSynergyKombucha

87.     On February 17, 2014, at 4:29 p.m. Arlene Avocado posted the following on Defendants' Facebook webpage:

"Why did your carbonation become so inconsistent? For months now, every bottle (no matter what the flavor) is either dead flat or so bubbly it's impossible to drink within hours of opening."

www.facebook.com/GTsSynergyKombucha

88.     On February 18, 2014, at 6:18 p.m. Defendants' posted the following on their Facebook webpage in response to Arlene Avocado's posting set forth in Paragraph 83 *supra*:

"Hello Arlene ...We keep our Kombucha raw, free of any processing, which means that we do not fore carbonate our kombucha…the effervescence that you have experienced in the past is 100% naturally occurring. Since we choose to keep our Kombucha raw, every bottle will have its own unique personality. We invite you to reach out to our customer service team for more info. Your support means the world to us as does your satisfaction...Contact us here: info@gtshombucha.com"

www.facebook.com/GTsSynergyKombucha

89.     On February 23, 2014, Griffin Elizabeth Wilson posted the following on Defendants' Facebook webpage:

"Have you changed anything with your bottling? In the last 2-3 weeks every bottle I've purchased has been impossible to open! I want to keep buying your kombucha but not if a bottle is going to take 10 minutes to open and leave a blister on my hand ):"

www.facebook.com/GTsSynergyKombucha

90.     On February 25, 2014, at 5:34 p.m. Chris Stone posted the following on Defendants' Facebook webpage:

"I am having difficulty opening your drinks. The ones that are impossible all have 'Enjoy by 03/28/14- 06220*B6' on the caps.

The store I get mine from had ones that expired in Feb. last time I got some, but I could open those. It seems to be this newer batch.

I really can't open my bottle- not even with a monkey wrench."

www.facebook.com/GTsSynergy/Kombucha

91.     On February 25, 2014, at 8:16 p.m. Pam Kopechek posted the following on Defendants' Facebook webpage:

21

"yeah. seriously my hands hurt."

www.facebook.com/GTsSynergy/Kombucha

92.      On February 26, 2014, at 1:55 p.m. Kanya Zillmer posted the following on Defendants'
Facebook webpage:

"Seriously I just drilled through the top."

www.facebook.com/GTsSynergy/Kombucha

93.      On February 27, 2014, at 12:18 a.m. Chris Stone posted the following on Defendants'
Facebook webpage:

"HA! ME TOO! (With a corkscrew bottle opener)"

www.facebook.com/GTsSynergy/Kombucha

94.      On February 27, 2014, at 5:29 a.m. Sara Romania Hevesi posted the following on
Defendants' Facebook webpage:

"Oh no I can't open my bottle either! I wanted to go buy more but I'm scared they will all have
this issue! Has anyone managed to open it and how?"

www.facebook.com/GTsSynergy/Kombucha

95.      On February 27, 2014, at 11:55 a.m. Emilee Tracy posted the following on Defendants'
Facebook webpage:

"I'm so bummed out that I have to go around asking 3 or 4 people for help opening my bottle
of kombucha. It's been across the board for a few weeks, with many different variations. I've
skinned my palm a few times straining against the bottle. What is going on?! PLEASE FIX
THIS!"

www.facebook.com/GTsSynergy/Kombucha

96.      On February 27, 2014, at 11:56 a.m. Emilee Tracy posted the following on Defendants'
Facebook webpage:

"As a side note, I am not a weak person. The last bottle I struggled with took two coworkers
and finally a 250lb man to finally open it. And it took him several minutes too."

www.facebook.com/GTsSynergy/Kombucha

97.      On February 27, 2014, at 12:05 p.m. Robin Moore posted the following on Defendants'
Facebook webpage:

"I've had to use a vice grip on the past 4 bottles and grip strength is not one of my

22

weaknesses."

www.facebook.com/GTsSynergy/Kombucha

98.   On February 27, 2014, at 1:51 p.m. Defendants' posted the following on their Facebook webpage in response to Emilee Tracy's postings set forth in Paragraphs 91-92 *supra*:

"Hello :-) GTs Synergy Kombucha We are so sorry for your experience! Kindly reach out so that we may make this right. info@gtskombucha.com. We truly thank you for reaching out!"

www.facebook.com/GTsSynergy/Kombucha

99.   On February 27, 2014, at 1:53 p.m. Defendants' posted the following on their Facebook webpage in response to Sara Romania Hevesi's posting set forth in Paragraph 90 *supra*:

"Hello :-) We are so sorry for your experience! Kindly reach out so that we may make this right: info@gtskombucha.com. We truly thank you for reaching out!"

www.facebook.com/GTsSynergy/Kombucha

100.   On February 27, 2014, at 3:42 p.m. Carolyn Kingsley posted the following on Defendants' Facebook webpage:

"Have you guys changed packaging recently? The last few bottles I've purchased (all from Whole Foods in Plano, TX) have been impossible to open! Not enjoying spending 30 minutes trying to open a bottle only to end up with scrapes and calluses..."

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

101.   On February 28, 2014, at 4:25 p.m. Defendants posted the following on their Facebook webpage in response to the Carolyn Kingsley's posting set forth in Paragraph 96 *supra*:

"Hello Carolyn! We are sorry for your experience! Kindly contact our customer service team so that we may make this right: info@gtskombucha.com. They are expecting you and will welcome you with open arms. We truly thank you for reaching out!"

www.facebook.com/GTsSynergy/Kombucha

102.   On March 4, 2014, at 12:21 p.m. Laura Michelle Serafine posted the following on Defendants' Facebook webpage:

"***Guys, I love your product. The chia seed ones are my favorite…but I cannot open them. I am not particularly weak. I have had many people try to open them with no success. Is there some trick? My hands are RAW from trying***..." [emphasis added]

www.facebook.com/GTsSynergy/Kombucha

103.   On March 4, 2014, at 5:00 p.m. Karen Terra posted the following on Defendants' Facebook webpage in response to the posting listed in Paragraph 98 *supra*:

23

"*Yes. I was just about to send them a message. Over the last couple weeks I've noticed the chia seed bottles have been difficult to open. I've been able to open a couple after a long struggle. But I have two bottles right now that are impossible to open. I am going to return them.*" [emphasis added]

www.facebook.com/GTsSynergy/Kombucha

104.    On March 4, 2014, at 5:06 p.m. Laura Michelle Seafine posted the following on Defendants' Facebook webpage:

"I have tried the hot water and still no luck... I just cant get them open at all!!..."

www.facebook.com/GTsSynergy/Kombucha

105.    On March 6, 2014, at 10:26 a.m. Vincent Beggs posted the following on Defendants' Facebook webpage in response to Defendants' request to contact them listed in Paragraph 78 *supra*:

"*Rather than asking us to contact customer service, maybe you could let us know what you are doing about the problem. If there is a trick to opening the bottles, share it publicly. If there is a fix in the works, please let us know. Clearly there is a prevalent issue here and as a relatively strong 200lb man who struggles opening these bottles lately, I am going to stop purchasing what is otherwise a fantastic product of this issue.*" [emphasis added]

www.facebook.com/GTsSynergy/Kombucha

106.    On March 6, 2014, at 5:02 p.m. Dora Jenner posted the following on Defendants' Facebook webpage in response to the posting listed in Paragraph 96 *supra*:

"*Apparently people at GT's don't care enough to respond to all of these complaints about a tight bottle. I've almost killed myself trying to open these bottles. Its been going on for over a month now across 20+ bottles I bought. Terrible and terrible customer response to this major issue.*" [emphasis added]

www.facebook.com/GTsSynergy/Kombucha

107.    On April 21, 2014, Jade Swikert posted the following on Defendants' Facebook webpage:

"Why are these bottles nearly impossible to open."

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

108.    On April 21, 2014, in response to Jade Swikert's posting set forth in paragraph 103 *supra*, Defendants posted the following reply on their Facebook webpage:

"Hello Jade, much gratitude for reaching out! WE apologize for this inconvenience and invite you to contact us at info@gtkombucha.com so that we can make this right for you."

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

109.    On April 21, 2014, Tory Gallagher posted the following on Defendants' Facebook webpage in response to the posting set forth in Paragraph 104 *supra*:

"Awesome! I will be contacting you too. I couldn't open my kombucha (it was SO tight) so I tried a wrench and it shattered the bottle ha..."

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

110.    On April 22, 2014, Andrew Perry posted the following on Defendants' Facebook webpage:

"The caps on your bottles are so tight I nearly dislocated my finder getting it open. This is not an isolated incident pretty much since you guys came out of the alcohol fiasco this has been an issue what gives?"

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

111.    On May 31, 2014, username Sue posted the following on inmytummy.com:

"I am super allergic to alcohol, my heartrate goes up to almost 200 on a few sips of beer or wine and way way less than a shot of any hard liquor- my face is flushed, I can feel the blood pumping through my fingertips and toes…When I first had the synergy kombucha, about 1/3 of the way in, I was like, there's so much alcohol in this, I feel woozy, I can feel my heart pumping blood, I can't believe there's no warning and anyone can drink them!"

www.inmytummy.com/2013/02/14/classic-vs-enlightened-gts-synergy-kombucha/

112.    On June 9, 2014, Gabriel Garcia posting the following on Defendants' Facebook webpage:

"im sitting here getting lit up on some original formulas! man these things have a high alcohol content!!! it really soothes a broken heart!"

www.facebook.com/GTsSynergy/Kombucha

113.    On June 24, 2014, Joseph Kuehner posted the following on Defendants' Facebook webpage:

"Are these carbonated? Mine exploded everywhere on the wall all over my counter all the way to my shower curtain! WTF!"

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

114.    On June 24, 2014, in response to Joseph Kuehner's posting set forth in paragraph 109 *supra*, Defendants posted the following reply on their Facebook webpage:

"We are so sorry to hear about this! We   would appreciate the opportunity to learn more so

that we can make it right. Email info@gtskombucha.com"

www.facebook.com/?sk=welcome#!GTsSynergy/Kombucha

115.    On July 11, 2014, Lulu Chang posted the following article on www.bustle.com entitled "Yup, Those GT's Kombucha Drinks Are Alcoholic, And They're Not the Only Ones."

http://www.bustle.com/articles/31353-yup-those-gts-kombucha-drinks-are-alcoholic-and-theyre-not-the-only-ones

116.    As set above, the DEFECTS contained in Defendants' kombucha are widespread, result in ongoing loss of product and therefore economic loss, and not uncommonly result in damage to bottles that leak or explode, all of which poses a significant economic harm and potential for danger to the public.   Such risk of harm is not academic.   In a separately filed action of LEYVA v MILLENNIUM et al, filed in Superior Court of California, County of Sacramento, a consumer was injured with cuts to her neck caused by a bottle of defendants' kombucha that literally exploded due to carbonation pressures, causing a need for emergency medical care and stitching.   The consumer was left with scars from the incident, reflecting the real-world hazards posed by the combined risk of the SECONDARY FERMENTATION and the packaging defendants elect to use to sell their kombucha products.

## CLASS ACTION ALLEGATIONS

117.    Plaintiffs bring this lawsuit as a class action pursuant to Rules 23(a), (b)(3), (b)(2) and (c)(4) of the Federal Rules of Civil Procedure. The class which they seek to represent is defined as:

> "All consumers in the United States who purchased at retail for personal, family or household purposes, and not for resale, within four years before the date this suit was filed, any of the kombucha products manufactured and/or sold by Defendants."

118.    Persons excluded from the Class are: (a) any Judge or Magistrate presiding over this action and members of their families; (b) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants have a controlling interest and their legal representatives, assigns, of Defendants and Defendants' current or former employees, officers, and directors;  (c) all persons who properly execute and file a timely request for exclusion from the class or are currently in litigation with Defendants, (d) all persons who assert personal injury claims arising due to the product formulation and packaging issues alleged herein; and; (e) the legal

representatives, successors or assigns of any such excluded persons.

Plaintiff proposes that the Class be divided into subclasses if and as necessary to align class interests.

119.    Plaintiff reserves the right to re-define the class or subclasses prior to class certification.

120.    Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can establish the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

121.    **Numerosity- Federal Rule of Civil Procedure 23(a)(1)**: The exact number of class members is unknown and is not available to Plaintiff, but it is clear that individual joinder of all class members is impracticable. The precise identities, numbers, and addresses of the members of the class is unknown to Plaintiff may and should be known with proper and full discovery of Defendants, third parties, and their respective records including, but not limited to, a search of consumer complaints to info@gtskombucha.com.

122.    **Commonality and Predominance- Federal Rule of Civil Procedure 23(a)(2)**: There is a well-defined commonality of questions of fact and law that exist as to all class members and predominate over the questions affecting only individual members. These common questions of fact and law include:

    a)  Whether the Defendants' unfairly, unlawfully, and/or deceptively manufactured, marketed, and/or distributed kombucha knowing that the products contained harmful DEFECTS including, but not limited to:

        1)  kombuchabeverages that, due to the SECONDARY FERMENTATION process, explode once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the bottle and/or cap causing damage and/or loss of product and/or diminution of value of the product;

        2)  kombucha beverages that, due the SECONDARY FERMENTATION process, leak from the cap once the carbon dioxide levels in the bottle exceeds the pressure tolerance of the cap causing damage and/or loss of product        and/or    diminution of value of the product;

3)   kombucha beverages that, due to the SECONDARY FERMENTATION process, are under so much pressure that when the bottle is opened a majority of the product uncontrollably sprays out causing damage and/or loss of product and/or diminution of value of the product;

4)   kombucha beverages that, due to the SECONDARY FERMENTATION process, have the caps on so tight that the bottle cannot be safely opened or opened without significant loss or product and/or diminution of value of the proudct;

5)   Kombucha beverages, given their ingredients and content, should be packaged differently to avoid leakage and/or loss or product and/or diminution of value of the product;

6)   Kombucha beverages, given their ingredients and content, should be labeled in a manner that alerts a consumer about the likelihood of explosion, leakage, and loss of product; and

7)   Kombucha beverages that, due to the SECONDARY FERMINATION process, contain alcohol in excess of 0.5% and are not properly labeled as such in violation of both State and Federal law;

b)  Whether Defendants knew or should have known about the DEFECTS contained the kombucha that they manufacture, package, market, and distribute;

c)  Whether Defendants concealed from consumers and/or failed to reasonably and adequately disclose to consumers the DEFECTS contained in the kombucha that they manufacture, market, and distribute;

d)  Whether Defendants have acted or refused to act on grounds generally applicable to the classes;

e)  Whether Defendants knew or became aware of the DEFECTS, yet continued to manufacture, market, and distribute the kombucha without adequately and reasonably informing consumers and purchasers of the material DEFECTS;

f)  The amount of revenues and profits    Defendants received as a result of manufacturing,

28

marketing, and distributing kombucha that contain DEFECTS;

g) Whether Plaintiffs and Class Members are entitled to restitution, disgorgement of profits, or other equitable relief to remedy Defendant's unfair, unlawful and/or fraudulent business practices;

h) Whether Plaintiffs and Class Members are entitled to recover compensatory, exemplary, trebled, statutory or punitive damages based on Defendants' fraudulent, illegal, conduct or practices and/or or otherwise; and

i) Whether Plaintiffs and Class Members are entitled to an award of reasonable attorneys' fees, prejudgment interest, and costs of suit.

123. **Typicality- Federal Rules of Civil Procedure 23(a)(3)**: Plaintiffs' claims are typical of the claims of the members of the Class, as all such claims arise our of the Defendants' conduct manufacturing, marketing, advertising, distributing, and selling kombucha products that contain DEFECTS. In addition, Plaintiffs' claims are typical of the Class Members in that they would not have purchased Defendants' kombucha and/or would have taken adequate precautions to prevent the uncontrollable SECONDARY FERMENTATION process that proximately caused the DEFECTS which further caused injury to Plaintiff and the members of the class. Thus, Plaintiffs and class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law. The injuries and damages of each Class Members were caused directly by Defendants' wrongful conduct in violating the law as alleged.

124. **Adequacy of Representation- Federal Rules of Civil Procedure 23(a)(4):** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of Class Members they seek to represent; they have retained counsel competent and experienced in complex class action litigation; and Plaintiffs will prosecute this action vigorously.  The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

125. **Superiority- Federal Rules of Civil Procedure 23(b)(3)**:  A class action is superior to other available methods for the fair and efficient adjudication of the controversy, and will create a substantial benefit to both the public and the courts in that:

a) Costs of prosecuting the action  individually will  vastly  exceed  the  costs  for

prosecuting the case as a class action;

b)  Class certification will obviate the necessity of a multiplicity of claims;

c)  It is desirable to concentrate the litigation of these claims in a single forum;

d)  Unification of common questions of fact and law into a single proceeding before this Court will reduce the likelihood of inconsistent rulings, opinions, and decisions;

e)  A class action is a superior means of fairly and efficiently resolving this dispute. Given the complexity of the issues presented here, individual claims are not sufficiently sizeable to attract the interest of highly able and dedicated attorneys who will prosecute them on a contingency basis. A class action is therefore essential to prevent a failure of justice.

126.    Individual litigation of the legal and factual issues raised by the conduct of the Defendants would increase delay and expense to all parties and to the court system. The class action device presents far fewer management difficulties and provides the benefits of a single, uniform adjudication, economics of scale and comprehensive supervision by a single court.

127.    The court may be requested to also incorporate subclasses of Plaintiffs in the interest of justice and judicial economy.

128.    In the alternative, the class may be certified because

a)  The prosecution of separate actions by the individual members of the class would create a risk of inconsistent or varying adjudication with respect to the individual class members which would establish incompatible standards of conduct by defendant;

b)  The prosecution of separate actions by individual class members would create a risk of adjudications with respect to them which would, as a practical matter, be dispositive of the interests of other class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

c)  Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final and injunctive relief with respect to the members of the class as a whole.

129.    Class certification is appropriate   because Defendants have engaged in uniform and

common practice. All class members have the same legal right to and interest in redress for damages associated with the DEFECTS contained in Defendants' kombucha products

130.    All conditions precedent for the filing of this action have been met.

### FIRST COUNT: BREACH OF CALIFORNIA CONSUMER WARRANTY ACT
### BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

131.    All prior paragraphs are incorporated here by reference as though fully stated.

132.    Plaintiffs, and each of them, were consumers who, within the relevant statute of limitations purchased one or more bottles of kombucha manufactured and distributed by the defendants.

133.    At the time of the subject kombucha sales, the defendants were in the business of selling goods, including the subject kombucha, to retailers for retail sale.

134.    The subject kombucha violated the California Consumer Warranty Act because, *inter alia:*

    a.    The product was not of the same quality as those generally acceptable in the trade because the product was packaged in a substandard fashion that led to widespread spoilage, leaking, and property damage, and because the product was adulterated or similarly contaminated due to ongoing biological processes in the product which resulted in the presence of undesirable and unusual ingredients not labeled or desired by consumers, including but not limited to alcohol and unsafe levels of carbonation;

    b.    The product was not fit for the ordinary purposes for which such goods are typically used because they were unreasonably unsafe to open, subject to spoilage, posed an injury or property damage hazard, and were adulterated or similarly contaminated as alleged herein.

    c.    The product was not adequately contained, packaged, and labeled, as alleged herein. This includes but is not limited failure to use proper containers, seals, and lids to prevent leaking, exploding, and spoilage.  This also includes but is not limited to failure to properly provide adequate labeling regarding storage, property damage hazards, and the   presence   of   adulterating   substances (including but not limited to alcohol)

caused by the biological processes alleged herein.  Given the scope and potential seriousness of the product defects alleged herein, adequate labeling should have included further and clear admonishment concerning high pressure, leakage, and potential for adulteration from SECONDARY FERMENATION or some similar cautionary language.

135.    On information and belief, MILLENNIUM was responsible at all relevant times for all labeling of the subject products, and for the products' design, manufacture, packaging, and distribution.  All misrepresentations alleged herein were made by MILLENNIUM via its product packaging, and were on the packaging at the time each subject consumer made each subject purchase.  In each purchase, each consumer either read the labeling with the reasonable care to be expected of a consumer in the setting, or relied upon his or her knowledge of the labeling from prior purchases of the subject product in a reasonable fashion.  In each transaction, the consumer relied upon the labeling and reasonable consumer expectations in the marketplace in making the decision to purchase the product.  These reasonably led each consumer to conclude that the product was a typical beverage with typical risks and potential for waste.  However, MILLENNIUM knew that the subject products were atypical beverages with respect to the defects alleged herein, including but not limited to risk of explosion, risk of leakage, risk of product waste, and alcohol content.  Each consumer reasonably relied on such and purchased the product without being aware of these atypical features, which were material to the purchase and would have affected the decision to purchase, precautions associated with any purchase, and/or the price which the consumer would be willing to spend.  As a result, each consumer suffered a pecuniary loss and risk, and Defendants recognized a monetary gain.

136.    On information and belief, WHOLE FOODS at all relevant times was a retail seller of the subject products to the public, including but not limited to PEDRO and LEWIS.  As a retail seller, WHOLE FOODS published to consumers the labeling produced by MILLENNIUM by displaying and selling the subject products.  As a retail seller, WHOLE FOODS is responsible for honest and clear communication with its retail consumer customers, including all class members.  WHOLE FOODS liability is  derivative of MILLENNIUM'S  liability with

respect to labeling.  Further, WHOLE FOODS was on actual and constructive notice of the defects alleged herein, and took no corrective action with respect to labeling or other warning to consumers, thereby becoming complicit in MILLENNIUM'S misrepresentations and engaging in a joint venture with MILLENNIUM which gave rise to liability for MILLENNIUM'S misrepresentations.

137.     Plaintiffs, and each of them are entitled to equitable relief, as well as costs of litigation and attorney's fees (Civil Code 1794).  Plaintiffs request restitution and injunctive relief. Injunctive relief is warranted because the defendants in this matter have been on notice for years of the problems giving rise to this litigation.  Despite regulatory involvement, prior litigation, and ongoing consumer complaints, Defendants continue to sell the subject products without modifying the packaging and/or labeling.  Injunctive relief is available as equitable relief under Civil Code 1794, and would allow the court to order Defendants to make reasonable modifications to avoid this ongoing problem.  On information and belief, Plaintiffs assert that the expert information to be exchanged in this matter, much of which has already been obtained through pre-filing forensic investigation and laboratory testing, will provide the court with discrete and enforceable standards from which to fashion an appropriate injunction.

## SECOND COUNT: VIOLATION OF CALIFORNIA UNFAIR COMPETITION LAW
## (BUSINESS AND PROFESSIONS CODE 17200)
## BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS

138.     All prior paragraphs are incorporated here by reference as though fully stated.

139.     Defendants' conduct alleged herein violates the California Unfair Competition Law (Business and Professions Code 17200).  The conduct is unlawful and unfair, as alleged below.

140.     Defendant's conduct is unlawful in part because it violates California's Sherman Food, Drug and Cosmetic Laws, including Health and Safety Code sections 110545, 110565.  These statutes prohibit the sale of food that is adulterated, whether due to flawed production or problems in packing and distribution.  Manufacturing, distributing, or selling such food is unlawful. (Health and Safety Code 110620.)  In this instant action, defendants' products often spoil due to the conditions in which they   are   packed   and   shipped,   on   account   of

SECONDARY FERMENTATION and the method of bottling. This results, as noted in the consumer complaints above, in consumers receiving products that are not properly sealed, not safe to open, which are not appropriate for human consumption or spoil as to flavor, and which through ongoing metabolic processes develop substances of a kind and amount, including alcohol, for which the products are not labeled. In addition, the defendants' behavior in unlawful in that it violates California's Fair Advertising Law (Business and Professions Code 17500 et seq) by misleading consumers about the possibility, likelihood or tendency of the products to ferment to the point of having an alcohol content materially above that disclosed on the labeling. Such misleading advertising may be treated as a misdemeanor, underscoring its unlawfulness. This behavior also violates analogous statutes and regulations of the U.S. and other State governments including but not limited to those of the Federal Trade Commission, the Food and Drug Administration, and the Federal Alcohol Administration.

141. Defendants' conduct is unfair in part because they manufacture, distribute, and sell the subject products with the full knowledge of the aforementioned quality and adulteration issues. Doing so regularly deprives consumers of the benefit of the bargain on their purchases because, *inter alia*, the products spill, leak, or spoil in connection with carbonation/metabolic issues product packaging, and because they spoil or become unsuitable for drinking due to the development of excess alcohol.

142. Plaintiffs and those similarly situated suffered injuries in fact in that they lost the benefit of the bargain concerning their purchase of the subject kombucha, given that in each relevant instance the consumers paid for a drinkable beverage, but did not receive one.

143. Some Plaintiffs and those similarly situated suffered injury in fact in the form of illness and/or allergic reaction to unwarned- levels of byproducts/adulterants in the subject kombucha, including but not limited to alcohol.

144. Plaintiffs and those similarly situated suffered economic harm in that they lost the purchase price of the product which was or became undrinkable. Additionally a number of plaintiffs and those similarly situated had bottles of the subject product that spilled, leaked, or

"exploded" in such fashion as to damage other property such as purses, handbags, containers, vehicles, etc.

145.     Some Plaintiffs and those similarly situated suffered economic harm in the form of treatment costs and consumption of time due to illness and/or allergic reaction to unwarned-of levels of byproducts/adulterants in the subject kombucha, including but not limited to alcohol. Such consumption of time may be characterized as an economic harm where applicable through lost income, use of sick time in connection with employment, or temporary loss of household services.  Such treatment costs may include the cost of medications or health care provider consultations in connection with reactions to spoiled/adulterated kombucha.

146.     Plaintiffs, and each of them are entitled to equitable relief, as well as costs of litigation. Injunctive relief is authorized by California Business and Professions Code 17203.  Plaintiffs request restitution and injunctive relief.  Injunctive relief is warranted because the defendants in this matter have been on notice for years of the problems giving rise to this litigation. Despite regulatory involvement, prior litigation, and ongoing consumer complaints, Defendants continue to sell the subject products without modifying the packaging and/or labeling.  Injunctive relief would allow the court to order Defendants to make reasonable modifications to avoid this ongoing problem.  On information and belief, Plaintiffs assert that the expert information to be exchanged in this matter, much of which has already been obtained through pre-filing forensic investigation and laboratory testing, will provide the court with discrete and enforceable standards from which to fashion an appropriate injunction.

147.     Plaintiffs, and those similarly situated, reserve the right to seek costs, including but not limited to attorney's fees at the conclusion of this matter pursuant to California Code of Civil Procedure 1021.5 (Private Attorney General Act.)

## THIRD COUNT: VIOLATION OF CALIFORNIA CONSUMER LEGAL REMEDIES ACT
## (BUSINESS AND PROFESSIONS CODE 17200)
## BY PLAINTIFF LEWIS AND THOSE SIMILARLY SITUATED AGAINST ALL
## DEFENDANTS

35

148.　　All prior paragraphs are incorporated here by reference as though fully stated.

149.　　Plaintiff LEWIS and those similarly situated seek at the time of the initial filing of this lawsuit injunctive relief and attorney's fees in association with their Consumer Legal Remedies Act claims, reserving the right to amend per statute to seek damages after a notice period. (Civil Code 1782(d).)

150.　　Plaintiff LEWIS and those similarly situated were consumers in California, and purchased defendants' kombucha in California.  Defendants were at the time, and continue to be, businesses engaged in the manufacture, distribution, and sale of consumer goods in California, including the subject kombucha.   Defendants sold kombucha of the nature complained of herein, a good, to Plaintiffs and those similarly situated in discrete transactions throughout the statute of limitations period.

151.　　The defendants violated the Consumer Legal Remedies Act, Civil Code 1750 et seq, by the conduct alleged herein, and among other things:

　　　　a.　Representing that goods have characteristics or ingredients which they do not have in violation of Civil Code 1770(a)(5).  At all relevant times, defendants sold and continue to sell the subject kombucha in glass bottles with a printed label, a plastic cap, and a tear-away plastic cap-cover. Standard verbiage is placed on all of defendant's Millennium kombucha, including the statement, "This product contains a trace amount of alcohol."  However, in practice, the subject kombucha, especially but not limited to varieties with raw chia seeds added, continue in the SECONDARY FERMENTATION after they are packaged by Millennium Products.  This process of fermentation and generally of ongoing metabolic processes continues through shipping, display, purchase, and customer storage.  Although the kombucha labeling does state the product is perishable, it does not indicate anything about the fact that it will ferment and produce alcohol above legal limits (generally 0.05%) if not strictly refrigerated at all times, nor does in indicate that kombucha is stored, shipped, sold, districted, and packaged in a way that often leads to substantial amounts of alcohol being present, rather than just traces.  Kombucha,   including that at issue in this litigation, generally

36

has a flavor profile that is quite different from other commonly marketed beverages.  It is not sweet like soda or iced tea, although it certainly resembles iced tea in visual appearance.  It is not neutral like water.  Instead, it has a complex and, to many first time consumers, somewhat unusual and off-putting flavor with notes of flavors like vinegar.  Because of this, consumers, especially first time consumers, are likely not to note the presence of alcohol or other adulterants produced as a result of the SECOND FERMENTATION occurring after the initial bottling of the product.  In this manner, the failure to clearly and openly disclose the actual alcohol content leads to consumers who do not want to consume or purchase alcohol to nonetheless doing so.  This is an issue that can affect those who have allergic reactions to alcohol, religious observances governing alcohol use, minors or their parents who are mindful of alcohol use, those with medical or addiction issues, and others who choose to avoid alcohol.  Named Plaintiff LEWIS and those similarly situated are in this class.  These class members relied upon the labeling of the subject kombucha, including the language taken in its context, which includes small text visually separated from the ingredient list and thereby minimized in import, and the absence of any warnings to conclude that the product was safely considered non-alcoholic.  Within the current food marketplace where allergy warnings are rampant and liberally applied with respect to "trace" substances like nuts, wheat, and dairy, this language employed by Millennium was not sufficient to alert reasonably attendant class members, including but not limited to LEWIS, that a substantial amount of alcohol was present in the beverage.  To the contrary, it indicated that only trace amounts were present and thereby misrepresented the characteristics and ingredients in the product.  Such misrepresentations were reasonably relied upon, leading LEWIS and those similarly situated to consume the subject kombucha, which they would not have done if proper and forthright disclosure had been made.  In this way, the misrepresentation of the characteristics and ingredients of the product were factual and proximate cause of LEWIS and similarly situated plaintiffs consuming the subject beverage and incurring damages.

b.   Advertising goods or services with intent not to sell them as advertised in violation of Civil Code 1770(a)(9).  The defendants were and are aware of the alcohol content of the subject kombucha based on the many consumer complaints and prior litigation referenced above, as well as by knowledge of their own products and the products' manufacturing, distribution, and sales process.  Nonetheless, the defendants sold the subject kombucha with the labelling that it contained only trace amounts of alcohol.  Because the defendants were aware this was untrue, they knowingly advertised the kombucha product in a way that was not in keeping with their intent in terms of what they would sell.  This was reasonably relied upon by Plaintiff LEWIS and those similarly situated, which resulted in purchase and consumption of the beverage, and attendant injury and damages.

152.   At the time of the initial filing of this Complaint, Plaintiff LEWIS and those similarly situated seek injunctive relief in the form of revised labeling or pasteurization techniques in order to prevent consumers from being inadvertently subject to alcohol consumption by the defendants.

153.   Plaintiff LEWIS and those similarly situated seek costs and attorney's fees in connection with this cause of action.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs and the Class pray for judgment as follows:

1.   For an order certifying this action as a class action;

2.   For an order appointing Plaintiffs as representatives of the Class and their counsel of record as Class counsel;

3.   For an award of restitution to class members or for other such similar equitable relief as the Court may deem appropriate;

4.   For an order requiring Defendants to disgorge, restore, and return all monies wrongfully obtained together with interest calculated at the maximum legal rate;

5.   For an order enjoining the wrongful conduct alleged herein;

6.   For costs;

38

7.      For interest;

8.      For attorneys' fees under applicable law;

9.      For injunctive relief consistent with these pleadings and evidence developed in the litigation of this matter, including but not limited to an order to take corrective action with respect to the defects of the product.  On information and belief following reasonable expert inquiry, this may include pasteurization of the product, packaging the product in expandable materials such as plastic, packaging in stronger materials such as thicker glass, addition of a pressure relieving cap such as an expandable metal cap, reduction of fermentation fuel sources in products released for shipping, improvements in consumer-notice such as labeling, and/or improved distribution and storage protocols.

10.     For such other relief as the Court deems just and proper.

Plaintiffs do not seek physical or personal injury damages or collateral property loss damages in this matter.

Plaintiffs estimate restitution/equitable relief at $10,000,000 for default judgment/due process purposes, without waiving claim to additional amounts, and understanding the appropriate award for this matter will be determined according to proof.

Respectfully submitted,

Dated: August 19, 2016

**CLAYEO C. ARNOLD, APC**

/s/ Joshua H. Watson
Clayeo C. Arnold, Esq.  (CBSN 65070)
Joshua H. Watson (CSBN 238058)

**MORGAN & MORGAN
COMPLEX LITIGATION GROUP**

John A. Yanchunis (Bar No. 324681)

Marcio W. Valladares (Bar No. 986917)

## **DEMAND FOR JURY**

Plaintiffs hereby demand a jury trial.

Dated: August 19, 2016

**CLAYEO C. ARNOLD, APC**


/s/ Joshua H. Watson
Clayeo C. Arnold, Esq.  (CBSN 65070)
Joshua H. Watson (CSBN 238058)


## **DECLARATION OF VENUE PURSUANT TO CIVIL CODE 1780**

I, Joshua H. Watson, declare the following to be true:

1. I am an attorney licensed to practice in the State of California and before this Court.  I practice at the Arnold Law Firm, counsel of record for the named plaintiffs herein.  I have personal knowledge of the matters stated in this affidavit based upon my interview and inquiry of my clients and facts related to the filing of this matter.

2. Both of the named plaintiffs in this Complaint state, I believe honestly, that they purchased Millennium kombucha from Whole Foods in San Francisco, California.  Therefore the transactions giving rise to this litigation for these plaintiffs took place within the geographic territory of jurisdiction and venue of the court in which this matter is to be filed.  Further, Whole Foods, by operating one or more stores in San Francisco, does business in San Francisco.  Based on the foregoing, I believe this matter is appropriately filed in the U.S. District Court for Northern California.

The foregoing is true and correct under penalty of perjury.  Executed in Sacramento, California on August 19, 2016.

/s/Joshua H. Watson #238058
Joshua H. Watson, Esq.